# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **SOVERAIN SOFTWARE LLC,** | § | |
| | § | |
| **Plaintiff,** | § | **Hon. Leonard Davis** |
| | § | |
| **v.** | § | **Civil Action No. 6:12-cv-148** |
| | § | |
| **NORDSTROM, INC.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## DEFENDANT NORDSTROM INC.' S MOTION TO
## TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND FACTS ........................................................................................... 2

III.  ARGUMENT .............................................................................................................. 4

       A.   This Court Should Transfer Nordstrom to the Northern District of Illinois ........... 5

       1.   This Case "Could Have Been Filed" in the Northern District of Illinois................ 5

       2.   All of the Private Interest Factors Weigh Heavily in Favor of Transfer to
            the Northern District of Illinois ............................................................................ 6

            (a)   The Relative Ease of Access to Sources of Proof Favors Transfer............. 6

            (b)   The Availability of Compulsory Process in the Northern District of
                  Illinois Also Weighs in Favor of Transfer ................................................. 7

            (c)   The Cost of Attendance for Witnesses Favors Transfer ............................. 8

            (d)   Other Practical Issues that Make Trial of a Case Easy, Expeditious
                  and Inexpensive also Favor Transfer .......................................................... 9

       3.   On Balance, the Public Interest Factors Weigh in Favor of Transfer ................. 12

            (a)   The Local Interests Favor Transfer .......................................................... 12

            (b)   The Administrative Difficulties Factor Favors Transfer ........................... 12

            (c)   The Remaining Public Interest Factors Are Neutral ................................. 12

       B.   In The Alternative, This Court Should Transfer Nordstrom to the Northern
            District Of California ......................................................................................... 13

IV.   CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Page**

**Cases**

Acer, Inc. v. Tech. Properties Ltd.,
   C 08-877 JF (HRL), 2012 U.S. Dist. LEXIS 81322 (N.D. Cal. Feb. 4, 2009) ........................10

Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.,
   512 F. Supp. 2d 1039 (S.D. Tex. 2007) ................................................................................8

Aten Int'l Co. v. Emine Tech. Co.,
   261 F.R.D. 112 (E.D. Tex. 2009) (Davis, J.) ........................................................................12

Droplets, Inc. v. eBay, Inc. et al.,
   2:11-cv-401, slip op. (E.D. Tex. July 2, 2012) ............................................................passim

Fujitsu Limited v. Tellabs, Inc.,
   639 F. Supp. 2d 761 (E.D. Tex. 2009) ............................................................................5, 9

Gucci Am., Inc. v. Wang Huoqing,
   C-09-05969 JCS, 2011 U.S. Dist. LEXIS 783 (N.D. Cal. Jan. 3, 2011) ...................................6

In re Acer Am. Corp.,
   626 F.3d 1252 (Fed. Cir. 2010) ....................................................................................4, 6

In re Genentech, Inc.,
   566 F.3d 1338 (Fed. Cir. 2009) ........................................................................................7

In re Hoffmann-La Roche, Inc.,
   587 F.3d 1333 (Fed. Cir. 2009) ........................................................................................7

In re Morgan Stanley,
   417 Fed. App'x 947 (Fed. Cir. Apr. 6, 2011) ............................................................. 1, 10, 12

In re TS Tech USA Corp.,
   551 F.3d 1315 (Fed. Cir. 2008) ........................................................................................5

In re Verizon Business Network Services Inc.,
   635 F.3d 559 (Fed. Cir. 2011) ........................................................................................10

In re Volkswagen AG,
   371 F.3d 201 (5th Cir. 2004) ......................................................................................4, 8

In re Volkswagen of Am., Inc.,
   545 F.3d 304 (5th Cir. 2008) ......................................................................................1, 5

In re Zimmer Holdings, Inc.,
   609 F.3d 1378 (Fed. Cir. 2010) ......................................................................................10

InfoSys Inc. v. Billingnetwork.com, Inc.,
   No. 03-c-3047, 2003 U.S. Dist. LEXIS 14808 (N.D. Ill. Aug. 26, 2003) ...................................5

Ventronics Sys., LLC v. Drager Med. GmbH,
   6:10-cv-582, 2011 U.S. Dist. LEXIS 154793 (E.D. Tex. Oct. 20, 2011) ...........................6, 8, 9

**Rules**

28 U.S.C § 1391(c) ................................................................................................6

28 U.S.C § 1400 ....................................................................................................6

28 U.S.C. § 1404(a) ........................................................................................passim

Cal. Civ. Proc. Code § 410.10 ..............................................................................6

**Statutes**

Fed. R. Civ. P. 4(k) ...........................................................................................5, 6

Defendant Nordstrom, Inc. ("Nordstrom") respectfully submits this motion pursuant to 28 U.S.C. § 1404(a) to transfer venue to the United States District Court for the Northern District of Illinois or, in the alternative, the Northern District of California.

## I.    INTRODUCTION

This case is one of several recent patent infringement suits filed in this District by Plaintiff Soverain Software, LLC ("Soverain"), a Chicago-based licensing entity.  Soverain alleges that Nordstrom, as well as the 37 other defendants in the co-pending actions (the "Related Defendants")[1], have infringed its patents by operating e-commerce websites that include "shopping cart" and "hypertext" features.  Soverain has filed similar claims in this District in the past against other groups of defendants.[2]

Neither Soverain nor Nordstrom has any relevant offices, employees, documents or witnesses in this District.  In fact, the only pertinent connection between this case and East Texas is Soverain's "choice to file there."  See In re Volkswagen of Am., Inc., 545 F.3d 304, 318 (5th Cir. 2008) ("Volkswagen II").  This connection, however, is not enough to hold this case in the Eastern District of Texas.  The Federal Circuit has repeatedly held that prior litigation involving the same patents cannot overcome the public and private interest factors that must be considered in evaluating transfer motions under Section 1404.  See In re Morgan Stanley, 417 Fed. App'x 947, 949 (Fed. Cir. Apr. 6, 2011); see also Droplets, Inc. v. eBay, Inc. et al., 2:11-cv-401, slip op.

[1] The Related Defendants include Euromarket Designs, Inc. d/b/a Crate & Barrel and CB2 and related entities; Williams-Sonoma, Inc.; Saks, Inc. and related entities; Office Depot, Inc.; Walgreen Co. and related entities; Oracle Corp.; J. Crew Group, Inc.; Kohl's Corp.; and eBay, Inc.  Nordstrom understands that at least 24 of the 38 Related Defendants are also moving to transfer to the Northern District of Illinois or, in the alternative, to other venues closer to their documents and knowledgeable employees.

[2] Soverain has initiated three prior litigations in this District alleging infringement of the patents in suit (collectively, the "Prior Soverain Actions"):  Soverain Software LLC v. Amazon.com, Inc., et al., No. 6:04-cv-14 (the "Amazon Action"), Soverain Software LLC v. CDW Corp., et al., No. 6:07-cv-511 (the "Newegg Action"), and Soverain Software LLC v. J.C. Penney Corp., Inc., et al., No. 6:09-cv-274 (the "J.C. Penney Action").  The Amazon Action settled before trial.  The Newegg and J.C. Penney Actions are currently on appeal to the Federal Circuit.  See Newegg Action [Dkt. 445]; J.C. Penney Action [Dkt. 565; 566].  Accordingly, none of the Prior Soverain Actions are currently before this Court.

at 17 (E.D. Tex. July 2, 2012), Declaration of Constance S. Huttner ("Huttner Decl.") Ex. 1. Consideration of these factors here strongly favors transfer to the Northern District of Illinois, which is home to Soverain and is more convenient for both party and non-party witnesses, including the inventors and prosecuting attorneys and persons who may testify concerning the prior art.

The convenience of these witnesses and the availability of the Court's subpoena power to compel their attendance at trial in the Northern District of Illinois vastly outweigh any judicial economy that might arguably result from the Court's consideration of the patents in suit in the Prior Soverain Actions.  Were this not the case, Chicago-based Soverain would have a free pass to bring suit in this District against any and all internet retailers that it alleges use "shopping cart" or "hypertext" technology -- which likely includes most companies doing business on the internet today -- regardless of where they or their accused systems, evidence, and witnesses are located.  Such an absurd result would be contrary to Section 1404(a) and the policies behind it. In any event, the Court's rulings in the Prior Soverain Actions and any subsequent decisions by the Federal Circuit arising out of the Newegg or J.C. Penney appeals are a matter of record which can be read by the District Court Judges in the proposed transferee courts.

This case should, therefore, be transferred without delay to the United States District Court for the Northern District of Illinois or, in the alternative, the Northern District of California.

## II.     **BACKGROUND FACTS**

Soverain filed this action on March 14, 2012 alleging infringement of United States Patent Nos. 5,715,314 and 5,909,492 (the "Patents in Suit") by the "shopping cart" and "hypertext" features of Nordstrom's e-commerce website, www.nordstrom.com.  Soverain filed similar cases against the Related Defendants on the same date.

Neither Nordstrom nor any of the Related Defendants are based in this District. Nordstrom is a Washington corporation with its principal place of business in Seattle, Washington.  Declaration of John Mayfield ("Mayfield Decl.") ¶ 2.  Nordstrom operates 229 retail stores in the United States.  Id. ¶ 4.  Seventeen are in Texas, including two in the Eastern District of Texas.  Id.  Nordstrom operates 11 stores in Illinois, all of which are in the Northern District of Illinois and 65 stores in California, including 14 in the Northern District of California. Id.

The accused Nordstrom website is accessible from anywhere in the United States, not just the Eastern District of Texas.  Id. ¶ 3.  The engineers and other technical personnel involved with the development of the accused website, as well as the employees responsible for accounting, sales, and marketing for the accused website are located in Seattle, as are the documents relating to the accused website.  Id. ¶ 9.  No documents or witnesses relating to the accused website are located in Texas.  Id.  All of Nordstrom's witnesses would be inconvenienced by traveling to Tyler, Texas, which would require additional travel time compared to the Northern District of Illinois or the Northern District of California.  Id. ¶¶ 10, 11.

Nordstrom has identified several potential non-party witnesses who also reside in the Northern District of Illinois.  These include Soverain's damages expert, Ray Sims, and potential prior art witnesses Steven Wilson and individuals associated with Peapod, LLC.  Huttner Decl. Exs. 2-5.  Other potential third party witnesses appear to be located in areas that are closer to Chicago than East Texas.  These include Soverain's technical expert, prosecuting attorneys, and individuals with knowledge of relevant prior art who were listed as potential trial witnesses in the Prior Soverain Actions.[3]

---

[3] Michael Shamos, Soverain's technical expert in the Prior Soverain Actions appears to be located in Pittsburgh. Huttner Decl. Exs. 2, 3.  Based on Nordstrom's research, prosecuting attorneys James Mrose, Jon Wright and Robert

Finally, Soverain and its employees and other sources of proof are likely located in Chicago, or, at least, are more easily transported there than to Tyler, Texas.  See In re Acer Am. Corp., 626 F.3d 1252, 1256 (Fed. Cir. 2010) (concluding that sources of proof will likely be located where the parties have their primary offices).  This is borne out by the fact that at least 44 of the 64 witnesses that Soverain identified in its trial witness lists in the Prior Soverain Actions appear to be located on the East or West Coasts, and can travel more easily and quickly to the Northern District of Illinois than to East Texas.  Huttner Decl. Ex. 2, 3.  Based on Nordstrom's research, at least nine are from Chicago or areas that are closer to the Northern District of Illinois than to this District (Washington, DC, Pennsylvania and Ohio).  Id.  To the best of Nordstrom's knowledge, Soverain identified only two potential witnesses located in this District.  Both are employees of J.C. Penney Corp., and were to be called, if at all, by deposition designation.  Id.

As discussed below, all of these facts strongly support Nordstrom's Motion to Transfer.

## III.  ARGUMENT

Under Section 1404(a), a district court may transfer a civil action to another district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).   The threshold question is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I").  Once this threshold question is answered in the affirmative, as it must be here, a court must analyze private and public interest factors relating to the convenience of parties and witnesses, as well as the interests of the competing venues, to determine if transfer is warranted based on the facts of the case.  See Fujitsu Limited v. Tellabs, Inc., 639 F. Supp. 2d 761, 765 (E.D. Tex. 2009) (Davis, J.)

---

Sterne are in Washington, DC and prosecuting attorney David Cochran is in Cleveland.  Id. Ex. 6.  Glenn Crocker and David Eastburn, listed as prior art witnesses in the Prior Soverain Actions, appear to be located in Kansas and Ohio.  Id.  Exs. 7, 8.

4

Fifth Circuit law governs transfer motions in this District. In re TS Tech USA Corp., 551 F.3d 1315, 1319 (Fed. Cir. 2008). The Fifth Circuit has identified the private and public interest factors governing transfer motions as follows:

> The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

> The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law.

Volkswagen II, 545 F.3d at 315 (internal citations omitted). Importantly, no single factor is dispositive. Id. Moreover, a plaintiff's choice of venue is not an independent factor in the transfer analysis, although it contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient." Id. at 314-315.

**A.      This Court Should Transfer Nordstrom to the Northern District of Illinois**

**1.      This Case "Could Have Been Filed" in the Northern District of Illinois**

There can be no dispute that this case "could have been filed" in the Northern District of Illinois. Nordstrom has stores in the Northern District of Illinois and makes substantial internet sales in that District. Mayfield Decl. ¶¶ 4, 5. Accordingly, the Northern District of Illinois has jurisdiction over Nordstrom. See Fed. R. Civ. P. 4(k); InfoSys Inc. v. Billingnetwork.com, Inc., No. 03-c-3047, 2003 U.S. Dist. LEXIS 14808 at *4-6 (N.D. Ill. Aug. 26, 2003) (holding that an entity which has continuous and systematic business contact with Illinois -- including through

internet sales -- may be sued there).  Because Nordstrom is subject to personal jurisdiction in the

Northern District of Illinois, venue is also proper in that District.  28 U.S.C §§ 1391(c), 1400.[4]

### 2.   *All* of the Private Interest Factors Weigh Heavily in Favor of Transfer to the Northern District of Illinois

#### (a)   The Relative Ease of Access to Sources of Proof Favors Transfer

The Fifth Circuit has held that "the sources of proof requirement is a meaningful factor in

the [transfer] analysis."  Volkswagen II, 545 F.3d at 316; see Droplets, slip op. at 5, Huttner

Decl. Ex. 1.   Here, this factor heavily favors transfer to Chicago because many of the parties'

documents and witnesses are either located there, or are more easily transported there than to this

District.  Soverain's corporate witnesses, including those identified as trial witnesses in the Prior

Soverain Actions, are also located predominantly in the Chicago area, as are its documents.  See

Acer, 626 F.3d at 1256.

Nordstrom's witnesses and documents are located in or near Seattle.  However, it will be

easier for them to travel to Chicago than to Tyler because Chicago is a transportation hub

serviced by regular nonstop flights from Seattle.   This Court has previously recognized that

transfer is warranted when the transferee court is clearly more convenient for the parties than the

Eastern District of Texas, even where some sources of proof are located outside the proposed

transferee forum.   See Ventronics Sys., LLC v. Drager Med. GmbH, 6:10-cv-582, 2011 U.S.

Dist. LEXIS 154793 at *11-12 (E.D. Tex. Oct. 20, 2011) (Davis, J.) (granting a motion to

transfer to the District of Delaware because "[w]hile Defendants' evidence is located throughout

the world … it appears that much of the evidence available in the United States is located along

the East Coast" and "the bulk of [Plaintiff's] evidence is located closer to Delaware than this

---

[4] Because Nordstrom has store locations and makes substantial internet sales in the Northern District of California, this case also could have been filed in that District.  Fed. R. Civ. P. 4(k); Cal. Civ. Proc. Code § 410.10; Gucci Am., Inc. v. Wang Huoqing, C-09-05969 JCS, 2011 U.S. Dist. LEXIS 783 at *21 (N.D. Cal. Jan. 3, 2011).

District.")  The Court's reasoning in <u>Ventronics</u> applies equally here because the bulk of the parties' evidence is located closer to or in the Northern District of Illinois.  Thus, <u>Ventronics</u> fully supports Nordstrom's Motion to Transfer.

> **(b)   The Availability of Compulsory Process in the Northern District of Illinois Also Weighs in Favor of Transfer**

The availability of compulsory process to secure the attendance of witnesses in the Northern District of Illinois also favors Nordstrom's Motion to Transfer.  Nordstrom is not aware of any potential witnesses that reside within 100 miles of this District and, thus, are subject to this Court's subpoena power.  In contrast, the Northern District of Illinois has subpoena power over several potential witnesses.  One such potential witness is Chicago resident Steven Wilson, who developed a prior art electronic shopping system for Telaction, Corp.  Huttner Decl. Ex. 4. The Northern District of Illinois will also have subpoena power over persons associated with Peapod, LLC, an online grocery store with a "shopping cart" feature that began operating in the Chicago area in 1989.  <u>See</u> Huttner Decl. Ex. 5 at 16.  Nordstrom may also subpoena former employees of Soverain and Divine, Inc., the Chicago-based company that owned the Patents in Suit between 2001 and 2003.  These employees are also believed to reside in the Chicago area. <u>See</u> Soverain's Supplemental Disclosures from the Amazon Action, Huttner Decl. Ex. 9, at 7.

Where, as here, the transferee venue is the only venue with subpoena power over relevant witnesses, this factor weighs heavily in favor of transfer.  <u>See In re Genentech, Inc.</u>, 566 F.3d 1338, 1345 (Fed. Cir. 2009); <u>see also In re Hoffmann-La Roche, Inc.</u>, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (finding that this factor favored transfer where the transferee district had subpoena power over at least four witnesses compared to one witness in the transferor district).

**(c)**     **The Cost of Attendance for Witnesses Favors Transfer**

"The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a)." Amini Innovation Corp. v. Bank & Estate Liquidators, Inc., 512 F. Supp. 2d 1039, 1043 (S.D. Tex. 2007) (internal quotations and citations omitted).   In Volkswagen I, the Fifth Circuit expanded on this factor, holding that "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled" when the distance between the existing venue and a proposed venue is more than 100 miles.  371 F.3d at 204-05.  This Court has also noted the "100 mile rule" favors transfer "if the transferee venue is a shorter average distance from witnesses than the transferor venue." Ventronics, 2011 U.S. Dist. LEXIS 154793 at *15.

Here, Soverain is likely to call witnesses who live near its principal place of business.  In the prior J.C. Penney Action, Soverain's witness list included Chicago residents Katharine Wolanyk and Christopher Jackson, who were identified as having knowledge about Soverain's background, finances, and licensing efforts.  Huttner Decl. Ex. 2, 3.  Soverain also relied on damages expert Ray Sims, who is a Chicago resident.  Id.  Nordstrom expects that Soverain will engage Mr. Sims for this case as well.

Non-Chicago based witnesses will also benefit from a transfer to the Northern District of Illinois.  This point is illustrated, inter alia, by the average travel time to Chicago of "key" non-Chicago based witnesses identified by Soverain in the Prior Soverain Actions.  See Soverain's Opposition to Amazon's Motion to Transfer Venue, No. 6:04-cv-14-LED (March 15, 2004), Huttner Decl. Ex. 10, at 7.  Eleven of these witnesses appear to be from the Boston area, including three of the inventors of the Patents in Suit and certain individuals associated with Open Market, the original assignee of the Patents in Suit.  Huttner Decl. Exs. 2, 3; see also Huttner Decl. Ex. 10 ("Soverain has key witnesses who reside in Massachusetts.  In particular,

all the inventors of the patents-in-suit reside in the Boston area.")  There are many non-stop flights between Chicago and Boston each day.  There are none from Boston to Tyler.  As set forth more fully in the Declaration of Constance S. Huttner, the shortest travel time from Boston to Tyler is more than twice the shortest travel time from Boston to Chicago.  Huttner Decl. ¶ 12 and Ex. 11.  The attorneys who prosecuted the Patents in Suit, who appear to reside in Washington, DC and Cleveland, Ohio, can also travel more easily and quickly to Chicago than to Tyler.  Id. ¶¶ 13-14 and Exs. 12-13.  Similarly, based on Nordstrom's research, the average travel time to Tyler for the 16 prior art witnesses listed by the defendants in the Prior Soverain Actions who Nordstrom may use to support its invalidity arguments is significantly longer than their average travel time to Chicago.  Id. ¶ 15 and Ex. 14.

Where, as here, the majority of witnesses are located in or closer to the transferee district than the Eastern District of Texas, this Court has found that transfer is warranted.  See Fujitsu, 639 F. Supp. 2d at 767 (granting motion to transfer to the Northern District of Illinois where 26 witnesses resided in Illinois, 27 witnesses resided in Texas, and 239 witnesses resided elsewhere because "the majority of witnesses relevant to analysis of this factor either reside in Illinois or significantly closer to Illinois than Texas"); see also Ventronics, 2011 U.S. Dist. LEXIS 154793 at *19 (granting motion to transfer to the District of Delaware because "most of the inventors, the prosecuting attorneys, and the party witnesses -- including [Plaintiff] itself, are located closer to the District of Delaware").

Thus, this factor also weighs strongly in favor of transfer.

> **(d)**  **Other Practical Issues that Make Trial of a Case Easy, Expeditious and Inexpensive also Favor Transfer**

Because there are no potential sources of proof located in this District, the sole conceivable argument for retaining venue here is the Court's adjudication of the Prior Soverain

Actions.  However, this Court has itself noted that "[t]he Federal Circuit has 'considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue.'" <u>Droplets</u>, slip op. at 17, Huttner Decl. Ex. 1 (citing <u>Morgan Stanley</u>, 417 Fed. App'x at 947, 949).  Moreover, the Federal Circuit recently held that "[t]o interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)." <u>In re Verizon Business Network Services Inc.</u>, 635 F.3d 559, 562 (Fed. Cir. 2011).  Indeed, the Federal Circuit has granted mandamus and ordered transfer where a prior lawsuit involving the same patent was the only real connection with this District.  <u>See</u> <u>Morgan Stanley</u>, 417 Fed. App'x at 949, (citing <u>Verizon</u> and <u>In re Zimmer Holdings, Inc.</u>, 609 F.3d 1378 (Fed. Cir. 2010)).

In any event, this Court's prior experience with the Patents in Suit is unlikely to substantially further judicial economy in this case.  Any court that presides over this case can read this Court's prior claim construction rulings and other decisions in the Prior Soverain Actions.

After claim construction, the invalidity and non-infringement aspects of this case are likely to present new issues regardless of the venue in which the case is heard.  When "different products are at issue . . . there is no guarantee that the same claims will be asserted" in a subsequent action on the same patent. <u>Acer, Inc. v. Tech. Properties Ltd.</u>, C 08-877 JF (HRL), 2012 U.S. Dist. LEXIS 81322 at *8 (N.D. Cal. Feb. 4, 2009).  Moreover, even if the same claims are asserted, they may be applied and argued differently against Nordstrom than they were against previous defendants.  For example, in the previous Newegg and J.C. Penney Actions, the infringement issues at trial turned on different arguments that were driven by differences between the accused systems.  In Newegg, the parties disagreed about whether the addition of

products to client-side cookies followed by the server-side insertion of these products into a database satisfied a claim limitation requiring modification of the shopping cart database. Newegg Trial Tr. April 26, 2010, Afternoon Session at 91:6-12 (Grimes), see also Newegg Trial Tr. April 29, 2010, Morning Session at 21:25-26:9 (Tittel), Huttner Decl. Ex. 15.  This issue did not arise in the J.C. Penney Action.  Instead, the parties disputed whether various numbers and arrangements of independent computers in each of the accused systems constituted the "shopping cart computer" required by the claims.  See J.C. Penney Trial Tr. Nov. 14, 2011, Afternoon Session at 110:3-21; 111:21-112:6; 112:9-22 (Grimes), Huttner Decl. Ex. 16.  Different prior art was also asserted in each of the Prior Soverain Actions.  And still other differences in non-infringement arguments and prior art positions are likely to emerge in this case.  Thus, the Court's familiarity with the Prior Soverain Actions may not materially reduce the effort the Court will need to spend here.

Finally, transferring this case to the Northern District of Illinois will not disserve judicial economy.  The case against Nordstrom is at its earliest stages, and there has been no discovery or claim construction.  Moreover, the majority of the Related Defendants are also seeking transfer to the Northern District of Illinois.  If these motions to transfer are also granted, any economies inherent in consolidated pre-trial proceedings will be preserved.[5]

---

[5] This conclusion is not undermined because certain Related Defendants are not moving to transfer.  In Droplets, this Court severed and transferred patent infringement claims against some defendants while retaining venue over others. Based on the Federal Circuit's view that "preservation of judicial economy should [not] preclude transfer to a more convenient venue," this Court found that "considerations of judicial economy are outweighed by [defendants'] sources of proof; the availability of compulsory process; the convenience of witnesses, and the strong local interest of the Northern District of California with regard to those defendants."  Droplets, slip op. at 17, Huttner Decl. Ex. 1 (citing Morgan Stanley, 417 Fed App'x at 949).  The same reasoning is applicable here.

### 3.    On Balance, the Public Interest Factors Weigh in Favor of Transfer

#### (a)    The Local Interests Favor Transfer

This Court has concluded that when the transferee venue is the principal place of business of one of the defendants as well as one of the plaintiffs, that venue has "a particularized local interest in this suit no matter the outcome of the case." Aten Int'l Co. v. Emine Tech. Co., 261 F.R.D. 112, 126 (E.D. Tex. 2009) (Davis, J.).  In so ruling, this Court considered and rejected the patentees' arguments that the Eastern District had a particularized local interest in the case based on the patentees' assertions that the defendants' allegedly infringing products were available in this District.  Id.  Thus, because Chicago is home to Soverain as well as seven of the Related Defendants,[6] and the Eastern District of Texas has no connection to this case, the local interests factor favors transfer.

#### (b)    The Administrative Difficulties Factor Favors Transfer

The administrative difficulties factor favors transfer.  This Court recently set jury selection in this case for March 2, 2015, approximately three years after the filing date of this case.  Huttner Decl. Ex. 17   By contrast, recent data from the United States Courts shows that the time from filing to trial in the Northern District of Illinois is 2.37 years.[7]

#### (c)    The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral.  The familiarity of the forum with the governing law factor is neutral because both districts are among the top five judicial districts for patent decisions, Huttner Decl. Ex. 18 at 32, and both districts are participating in the federal

---

[6] These defendants are Euromarket Designs, Inc. d/b/a Crate & Barrel and CB2; Meadowbrook, L.L.C. d/b/a The Land of Nod; Walgreen Co.; Walgreens.com, Inc.; Office Max, Inc.; W.W. Grainger, Inc.; and Quill Corp. Nordstrom understands that at least five of these seven defendants are also seeking transfer to the Northern District of Illinois.

[7] Judicial Caseload Profile for the Northern District of Illinois (for twelve month period ending September 30, 2011), see http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsSep2011.aspx.

judiciary's Patent Pilot Program.  And finally, as federal law applies, there is no potential conflict of law issue.

>   **B.      In The Alternative, This Court Should Transfer Nordstrom to the Northern District Of California**

If this Court determines that the public and private interest factors do not support Nordstrom's request to transfer to the Northern District of Illinois, Nordstrom is nonetheless entitled to transfer to the Northern District of California, a district that is significantly closer to its home in Seattle, Washington than this District.  In fact, this Court recently transferred another patent infringement action concerning Nordstrom's e-commerce website to the Northern District of California, recognizing that "the sources of proof; the convenience of witnesses; and local interest factors weigh in favor of transfer," relying on Seattle's proximity to Northern California as compared to East Texas.  Droplets, slip op.  at 16, Huttner Decl. Ex. 1.

As this Court has already ruled, all of the private interest factors discussed above also favor the Northern District of California over this District because many of Nordstrom's relevant documents and witnesses, including source code and other documents relating to its website sales and marketing, are located in Seattle.   Mayfield Decl. ¶ 9.   In addition, many Nordstrom personnel with relevant knowledge concerning the development, sales and marketing of the accused website are located in the Seattle area.   Id.; see Droplets, slip op. at 7, Huttner Decl. Ex. 1 (granting transfer to the Northern District of California because, inter alia, "Nordstrom's sources of proof are located in Seattle, Washington, much closer to the Northern District of California than to this district.")

According to Nordstrom's research, the Northern District of California will also have subpoena power over six individuals with knowledge of relevant prior art identified by defendants' in the Prior Soverain Actions.  Huttner Decl. Ex. 7, 8.  These individuals would

testify concerning potentially invalidating prior art systems developed for HotHotHot, Internet Shopping Network, Virtual Vineyards, and Future Fantasy Bookstore.   David Mackie, who appears on the face of the Patents in Suit (but has since been removed as an inventor) and  Jack Grimes, Soverain's infringement expert from the Prior Soverain Actions, also appear to reside in the Northern District of California.   Id.   Exs. 2, 3, 19.   In addition, Related Defendants in Soverain v. Macy's, Inc., et al., are also moving to transfer to the Northern District of California and Nordstrom understands that Related Defendants in Soverain v. Oracle Corp., et al., Soverain v. Williams-Sonoma, Inc. and Soverain v. Walgreen Co., et al. are seeking transfer to the Northern District of California as alternative relief.   If these cases are also transferred to the Northern District of California, the cases could be coordinated for pre-trial proceedings to preserve judicial efficiency.

The public interest factors also favor the Northern District of California over this District. The Northern District of California has a localized interest in this case because Nordstrom's principal place of business is nearby in Seattle.   Droplets, slip op. at 16, Huttner Decl. Ex. 1.  The Northern District of California is also well-versed in patent law.  Like the Northern District of Illinois, it is among the top five districts for patent decisions, Huttner Decl. Ex. 18 at 32, and participates in the federal judiciary's Patent Pilot Program.

Accordingly, should this Court determine that transfer to the Northern District of Illinois is not appropriate, all of the private and public interest factors favor transfer to the Northern District of California.

IV.     **CONCLUSION**

For the foregoing reasons, Nordstrom respectfully requests that this Court grant its Motion to Transfer this action to the Northern District of Illinois.  In the alternative, Nordstrom asks that this case be transferred to the Northern District of California.

Dated: September 21, 2012                            Respectfully submitted,

                                                     */s/ Constance S. Huttner*
                                                     David B. Weaver (Lead Attorney)
                                                     Texas Bar No. 00798576
                                                     Stephen C. Stout
                                                     Texas Bar No. 24060672
                                                     VINSON & ELKINS LLP
                                                     2801 Via Fortuna, Suite 100
                                                     Austin, Texas 78746-7568
                                                     Tel.:  (512) 542-8400
                                                     Fax:  (512) 542-8612
                                                     dweaver@velaw.com
                                                     sstout@velaw.com

                                                     Constance S. Huttner
                                                     (admitted pro hac vice)
                                                     Hilary L. Preston
                                                     Texas Bar No. 24062946
                                                     VINSON & ELKINS LLP
                                                     666 Fifth Avenue, 26th Floor
                                                     New York, New York 10103-0040
                                                     Tel.:  (212) 237-0000
                                                     Fax:  (212) 237-0100
                                                     chuttner@velaw.com
                                                     hpreston@velaw.com

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that in compliance with the requirements of Local Rule CV-7(h), counsel for Defendant Nordstrom, Inc. (Constance S. Huttner) met and conferred with counsel for Plaintiff, Soverain Software, LLC (John P. Lahad) on September 7, 2012 by telephone, regarding this motion and Plaintiff's counsel indicated that this motion would be opposed.  The parties were unable to resolve their disagreements as to the relevant points of fact and law, and discussions ended in an impasse, leaving an open issue for the Court to resolve.

Dated:  September 21, 2012                    */s/ Constance S. Huttner*
                                             Constance S. Huttner

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 21st day of September, 2012.

*/s/ Constance S. Huttner*
Constance S. Huttner

17